UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

      v.                                                                    Case No: 2:25-cr-77-KCD-NPM

JESUS PUJOL HERNANDEZ,
MIGUEL MARQUEZ ROMERO,
PAULO SABON MONTERO,

         Defendants,

                                          /

## **ORDER**

Defendant Miguel Marquez Romero moves the Court to sever his trial from his co-defendants, Jesus Pujol Hernandez and Paulo Sabon Montero, or, in the alternative, to excise their post-arrest statements from the Government's case. (Doc. 146.) The underlying charges are serious—conspiracy to carry out a murder-for-hire. (Doc. 56.) But Romero argues that a joint trial will inevitably violate his rights under the Sixth Amendment's Confrontation Clause. (Doc. 146 at 2-3.)[1] In his view, because his co-defendants gave recorded statements to law enforcement that allegedly point the finger at his involvement in criminal activity, letting a jury hear those statements without the opportunity for cross-examination flies directly in the face of *Bruton v. United States*, 391 U.S. 123 (1968). The Government pushes

---

[1] Ramero's motion is not paginated (*See* Doc. 146.) So the Court refers to the page numbers generated by its electronic filing system.

back, arguing that *Bruton* has no application here because the co-defendants' statements are not, standing alone, inculpatory of the crime charged. (Doc. 149.) The statements instead offer divergent, alternative explanations for the defendants' meeting. So any incriminating inference would arise only if the jury compared the explanations and linked them to outside evidence, an inferential leap that falls squarely outside *Bruton*'s narrow borders. (*Id.* at 6-7.) The Court agrees with the Government, so the motion to sever is **DENIED**.

## I. Background

This case began as an unexpected spin-off from an FBI wiretap. On April 16, 2025, FBI linguists flagged a recorded conversation between Romero and Montero that laid the factual groundwork for the current charges. During the call, the two men allegedly discussed murdering the brother of a wealthy man in Marco Island in exchange for a payout. To finalize the logistics, they agreed to meet with Hernandez, the individual allegedly brokering the murder-for-hire scheme.

The Government's passive monitoring then shifted to active physical surveillance. On April 17, 2025, Romero, Hernandez, Montero, and a fourth individual met at a grocery store in Naples, Florida. For approximately ten minutes, the men stood between their vehicles talking. According to Montero, Hernandez pulled out a printed photograph of the intended victim during this

huddle to show the group. The men then returned to their respective vehicles and departed. Their separation was short-lived. Law enforcement officers executed synchronized traffic stops, detained the men, and transported them to the sheriff's office for questioning. A subsequent search of Hernandez revealed the photograph shown in the parking lot.

What happened next inside the interrogation rooms brings us to the core of the current dispute. After waiving his *Miranda* rights, Montero claimed that Romero had hired him for a "job." But the job did not include killing anyone—it was to plant cocaine or a firearm on the victim. For his part, Romero maintained that the entire parking lot summit was merely a benign business meeting regarding a gutter installation project for his company. Hernandez offered a third narrative, claiming the photo was for a public shaming campaign involving flyers to embarrass the victim for sleeping with his brother's wife. Faced with these conflicting accounts, a federal grand jury returned a two-count indictment that charges the trio with conspiracy to use, and the use of, interstate commerce for murder-for-hire. (Doc. 56.)

## II. Discussion

Romero's alternative requests for severance or redaction rest entirely on a single constitutional anxiety: a purported *Bruton* violation. (Doc. 146 at 2-6.) In *Bruton*, the Supreme Court held "a defendant is deprived of his rights

under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987). But this represents a narrow exception to the general rule that "a witness whose testimony is introduced at a joint trial is not considered to be a witness against a defendant if the jury is instructed to consider that testimony only against a codefendant." *Id.* at 206. Accordingly, *Bruton* does not "bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant." *United States v. Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993).

"[O]nly those statements by a non-testifying defendant which directly inculpate a co-defendant" are problematic. *United States v. Beale*, 921 F.2d 1412, 1425 (11th Cir. 1991). "In other words, admission of a codefendant's statement is not error under *Bruton* where the statement was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Arias*, 984 F.2d at 1142. "Thus, [f]or *Bruton* to apply, a codefendant's statement must be clearly inculpatory standing alone." *Id.*

To begin, Romero's motion hits a significant procedural pothole: he asks us to perform a delicate constitutional extraction of allegedly prejudicial

4

statements without actually providing us with the statements themselves. As the record stands, the co-defendants' recorded interrogations were conducted in Spanish and have neither been translated nor transcribed. (Doc. 146 at 2 n.1.) Romero's high-level summaries and general characterizations are simply no substitute for the verbatim text. Without the actual transcripts, it is functionally impossible for this Court to accurately map out potential redactions, let alone determine whether these statements generate the specific and compelling prejudice required to tear apart a joint conspiracy trial. *See United States v. Lopez,* 649 F.3d 1222, 1234 (11th Cir. 2011). "[T]he court declines to grant [Romero's] motion to sever based on a hypothetical Sixth Amendment violation." *United States v. Gilbert,* No. 2:17-cr-00419-AKK-TMP, 2018 WL 2095737, at *5 (N.D. Ala. May 4, 2018); *see also United States v. Altorei,* No. 23-CR-407-LTS, 2025 WL 2381589, at *7 (S.D.N.Y. Aug. 15, 2025).

But even if we skip past that procedural roadblock and take Romero's characterizations of the statements at face value, his *Bruton* argument still misses the mark. According to the briefing, co-defendants Montero and Hernandez both explicitly denied the existence of any plan to kill the victim. Instead, they claimed the group met to pull off entirely different, less severe schemes—namely, planting drugs or hanging embarrassing flyers around town. Romero argues that because these statements place him at the scene

and brand him an active participant, they are inherently devastating to his defense. But that is simply not how *Bruton* works.

The Supreme Court has repeatedly emphasized that *Bruton*'s protective rule is a narrow exception tailored strictly for a non-testifying co-defendant's "powerfully incriminating" extrajudicial confession naming another defendant. *Gray v. Maryland*, 523 U.S. 185, 192 (1998). Here, the challenged statements are not confessions to the charged murder-for-hire plot at all. On the contrary, they are classic, competing exculpatory narratives designed to distance the speakers—and Romero—from the offense at issue. *See United States v. Joyner*, 899 F.3d 1199, 1207 (11th Cir. 2018); *see also United States v. Brown*, 551 F.2d 639, 647 (5th Cir. 1977). The proffered co-defendant statements do "not directly implicate the crew in the conspiracy, and therefore there [is] no *Bruton* violation." *United States v. Walden*, No. 03-20566-CR, 2003 WL 27385604, at *6 (S.D. Fla. Oct. 30, 2003); *see also United States v. Espinoza*, 635 F. App'x 739, 751-52 (11th Cir. 2015); *United States v. Taylor*, 792 F.2d 1019, 1023 (11th Cir. 1986); *United States v. Ramos-Cardenas*, 524 F.3d 600, 608 (5th Cir. 2008); *United States v. Taylor*, 720 F. Supp. 3d 131, 140 (D. Conn. 2024).

Admittedly, the co-defendants' narratives do plenty of work to tie Romero to his cohorts and show they were mixed up in some kind of trouble. But establishing that a group of alleged co-conspirators were associated, or

6

even that they were up to no good together, is not enough to manufacture a *Bruton* problem. *See, e.g., United States v. Mendez*, 490 F. App'x 287, 295 (11th Cir. 2012); *United States v. Miranda*, No. 94 CR 714, 1997 WL 627655, at \*4 (N.D. Ill. Sept. 22, 1997). This is a conspiracy to commit murder case. Because the co-defendants' statements require the jury to look to outside evidence to find any link to those charges, Romero's argument ultimately falls short. *United States v. Brazel*, 102 F.3d 1120, 1140 (11th Cir. 1997) ("No *Bruton* problem exists, however, where the statement was not incriminating on its face, and became so only when linked with evidence introduced later at trial.").

### III. Conclusion

The co-defendants' post-arrest statements, as they have been described, do not facially incriminate Romero in the charged murder-for-hire conspiracy. Instead, they offer competing, defensive accounts of an entirely different kind of misbehavior. Because those narratives require a jury to look to outside evidence to find any link to the actual charges, *Bruton* is not applicable, and a standard limiting instruction is capable of handling any prejudice presented.

But there is a caveat. As noted, the Court is operating without the benefit of the actual transcripts or English translations. It is tough to completely foreclose a constitutional challenge when the exact words spoken

remain up in the air. Accordingly, the Court will deny the motion without prejudice. When the official transcripts are finalized and translated, and if those transcripts reveal a true *Bruton* violation under the legal landscape mapped out in this order, Romero is free to re-raise the issue. He may do so either by way of a renewed pretrial motion or by making an appropriate objection during trial, where the Court will be fully equipped to evaluate the text with the precision the law demands.

**ORDERED** in Fort Myers, Florida on May 27, 2026.

Kyle C. Dudek
United States District Judge